UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID GORDON REAM,

                        Petitioner,                        Case Number 2:09-CV-12188
                                                                                           Honorable Paul D. Borman

v.

THOMAS K. BELL,

                        Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
AND (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

# I. Introduction

Petitioner David Ream has filed a habeas corpus petition challenging his state convictions for first-degree felony murder, MICH. COMP. LAWS 750.316(1)(b), and first-degree criminal sexual conduct. MICH. COMP. LAWS 750.520b(1). The petition raises four claims: (1) insufficient evidence was presented at trial to prove that stab wounds to the victim's genital area constituted "sexual penetration" to satisfy that element of first-degree criminal sexual conduct; (2) the misconduct of the prosecutor during closing argument rendered Petitioner's trial unfair; (3) Petitioner's trial attorney provided ineffective assistance of counsel; and (4) sentencing Petitioner for both felony-murder and criminal sexual conduct violates the Double Jeopardy Clause. The Court has determined from a review of the pleadings and record that Petitioner's claims lack merit. Accordingly, the petition will be denied.

# II. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arose after defendant forced his elderly neighbor into her bedroom, stripped her of her clothing, and stabbed her twenty-three times with a kitchen knife. The next day, the victim's daughter discovered the victim's dead body lying sideways in bed wearing only socks and one slipper. The knife was still protruding from the victim's abdomen. The daughter went to defendant's apartment to call the police, and defendant left his apartment in the middle of the phone call and went to his mother's house. Police discovered that the woman's assailant stabbed her four times in her genital area at a shallow angle, and one of those knife thrusts pierced the upper, but interior, portion of the victim's right labium majus. Pubic hairs were found on the bed near the dead body, on the bedroom carpet, and on clothing left lying on the floor of the victim's bedroom. Scientific analysis, including DNA testing, confirmed that the pubic hairs matched samples that were later removed from defendant. Although defendant had known the victim for years, he did not attend her funeral and moved out of his apartment the next day. He was eventually arrested at his brother's house in another state.

*People v. Ream,* 2007 Mich. App. LEXIS 1856, *1-2 (Mich. Ct. App. July 31, 2007).

Following his conviction, Petitioner filed an appeal by right in the Michigan Court of Appeals. His appellate brief raised the same claims he raises in the instant petition as well as additional claims. The Court of Appeals denied relief with respect to what now form Petitioner's first three claims, but it found that his conviction for first-degree criminal sexual conduct should be vacated on double jeopardy grounds. *Id.*

Both parties filed cross-appeals. The Michigan Supreme Court denied Petitioner's application for leave to appeal, but it granted the prosecutor's. In 5-to-2 decision, the court held that the Michigan legislature intended for multiple punishments to be imposed for someone who commits both first-degree felony murder and first-degree criminal sexual conduct, where the later offense is the predicate offense for the murder charge. The Court found that sentencing Petitioner for both offenses, therefore, did not violate the Double Jeopardy Clause. *People v. Ream,* 481 Mich. 223 (2008).

Petitioner then filed the instant action.

## III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678

3

(2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-87.

4

## IV. Discussion

### A. Sufficiency of the Evidence

Petitioner first claims that insufficient evidence was presented at trial on the element of sexual penetration to sustain his criminal sexual conduct conviction. Petitioner does not challenge the quanta of evidence presented at trial, but rather, he asserts that the location and direction of the stab wounds do not constitute "sexual penetration" under Michigan law because the stab wounds to the victim's genital area were not pointing towards the vagina.

The Michigan Court of Appeals rejected this claim on the merits. Review of the state court's determination is therefore doubly-deferential. First, as in all sufficiency-of-the-evidence challenges, the Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This must be done without reweighing the evidence, re-evaluating the credibility of witnesses, or substituting the Court's judgment for that of the fact-finder. *Id*; *see also Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review"). Even if the reviewing Court might not have voted to convict, it "must uphold the . . . verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id*.

Second, even if a Court concludes that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, on habeas review, it must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *Brown*, 567 F.3d at 205. A habeas court may not grant the writ unless the state court's decision was "objectively

5

unreasonable," or, in other words, no "fair minded jurists" could resolve the case in the way the state court did. *See Richter*, 131 S. Ct. at 786.

The state appellate court rejected Petitioner's sufficiency of the evidence claim as follows:

> Defendant first argues that the trial court erred by allowing the prosecution to amend the information to include felony murder and first-degree criminal sexual conduct (CSC I), and by denying defendant's motion for a directed verdict on those charges. Specifically, defendant argues that the crime could not constitute CSC I as a matter of law, because the assailant did not penetrate the victim's genital opening as required by MICH. COMP. LAWS 750.520a and MICH. COMP. LAWS 750.520b. We disagree. The photographic evidence in this case clearly demonstrates that the victim suffered a knife jab to the inside of her right labium majus, and that the thrust did not originate from the outside of the labium majus. In other words, the knife's blade had to penetrate between the victim's labia majora to make the intrusion indicated in the photograph. As we have previously held, the Legislature's use of the words "intrusion, however slight," and "genital . . . openings" in MICH. COMP. LAWS 750.520a to define "sexual penetration" indicate its intent to include penetration between the labia majora in its definition of sexual penetration. *People v. Bristol*, 115 Mich.App. 236, 238 (1981). We see no reason to deviate from that interpretation in the egregious and heinous circumstances of this case.
>
> Nor are we persuaded by defendant's argument that we should distinguish *Bristol* because the wounds in this case did not reflect sexual advancement toward the vagina. Not only does this argument misstate the statutory standard, it does not correspond to the facts of the case. The four knife wounds to the victim's vulva and its immediate vicinity clearly demonstrate defendant's fixation on the victim's genitalia. Also, the victim's state of undress, defendant's pubic hairs, and the angle of defendant's knife thrusts all overwhelmingly suggest a disturbingly sexual element to defendant's crime. It would not do any justice to our earlier interpretation of the statute to hold that a defendant must actually insert a knife blade into the vagina proper before we will find that sexual penetration has occurred. Therefore, we reject defendant's argument that the crime could not constitute CSC I as a matter of law. It follows that the trial court correctly denied defendant's motion for directed verdict on the CSC I charge and that we will not disrupt the trial court's post-bindover, un-appealed decision to grant the prosecutor's motion to reinstate the CSC I and felony murder charges to the information. *See People v. Hall*, 435 Mich. 599, 601-603, 615 (1990); *People v. McGee*, 258 Mich.App. 683, 693-694 (2003). We also reject defendant's corollary challenge to the trial court's CSC I jury instructions.

*Ream*, 2007 Mich. App. LEXIS 1856, *2-5.

Petitioner's claim fails on two grounds. First, viewed as a sufficiency of the evidence claim, the state court adjudication was reasonable. Second, because the claim is essentially an argument based on an interpretation of state law that was rejected by the state court, it is not cognizable in this Court.

First, state law defines the element of sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MICH. COMP. LAWS § 750.520a(r). This includes a penetration, however slight, between the labia majora. *People v. Bristol*, 115 Mich.App. 236, 238 (1981).

Here, the medical examiner testified at trial that the victim had four stab wounds to the genitals. One wound, to the right side of the vagina, went through the inner part of labia majora. The jury saw autopsy photographs showing the location of this wound. The prosecutor indicated that one photograph shows that the stab wound penetrated the inside of the labia majora. Based on this evidence a rational juror could have found beyond a reasonable doubt that the prosecutor satisfied the element of sexual penetration.

Next, Petitioner's argument is essentially a non-cognizable claim that the state courts misinterpreted the requirements of state law. Petitioner does not take issue with the fact that evidence shows that the knife passed through the labia majora. Rather, he argues that penetrations of the labia majora should only count as sexual penetrations if they are made in the direction of the vagina. The state appellate court declined to adopt this requirement. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

7

What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998).

In the present case, the Michigan Court of Appeals concluded that there was no requirement under state law that a penetration be made in the direction of the vagina to satisfy the sexual penetration element of first-degree criminal sexual conduct. Because this court must defer to a state appellate court's construction of the elements of state crimes, Petitioner is not entitled to habeas relief on his first claim.

### B. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed misconduct in her closing argument. Specifically, Petitioner asserts that the prosecutor misrepresented the evidence by speculating that Petitioner attacked the victim because she would not give him money. Petitioner also asserts that the prosecutor made the unfounded assertion that Petitioner attempted to penetrate the victim with his penis, and that the four stab wounds to her genital area all penetrated her vagina.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). When analyzing a

8

claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F. 3d at 1355-56; *See also Simpson v. Warren,* 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009).

>The Michigan Court of Appeals rejected Petitioner's claim as follows:
>
>>Defendant next argues that the prosecutor committed misconduct by referring to defendant's attack on the victim's "vagina," when, anatomically speaking, defendant only stabbed the victim's vulva and the surrounding genital area. We disagree. Defense counsel failed to object to the technical misidentification of the particular anatomical region stabbed, so "[n]o error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v. Leshaj*, 249 Mich.App. 417, 419 (2002). In this case, the prosecutor clearly used the term "vagina" in the colloquial sense, and obviated any prejudice caused by the technical mischaracterization of the evidence by referring the jury directly to the photographs depicting the victim's wounds. Under the circumstances, a timely instruction would have quickly and completely assuaged any prejudice caused by the prosecutor's lack of meticulousness in referring to the victim's anatomy. Therefore, we reject defendant's challenge on these grounds.
>
>*Ream*, 2007 Mich. App. LEXIS 1856, *6-7.

This decision was not unreasonable. Misrepresenting facts in evidence can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F. 3d 689, 700 (6th Cir. 2000).

But here, the prosecutor did not misrepresent the facts. Her description of the hypothetical encounter that led to the crime would not have been interpreted by the jury as an assertion of what actually occurred. The jury was well-aware that there was no evidence presented as to any particular conversation occurring between Petitioner and the victim just prior to the assault. Rather, the argument amounted to a narrative suggestion of how the crime may have unfolded based on the circumstantial evidence presented. Evidence was offered to show that Petitioner frequently performed handyman work for the victim, and the victim's daughter testified regarding her mother's personality and habits. The narrative description was not improper. *See Abela v. Martin*, 380 F. 3d 915, 929-30 (6th Cir. 2004) (prosecutor's presentation during closing argument of hypothetical conversation between defendant and his friend did not constitute reversible misconduct where prosecutor prefaced his argument by advising jury that they would probably never know exactly what was said, and jury instructions stated that counsel's arguments were not evidence). Likewise, the prosecutor's suggestion that Petitioner attempted to penetrate the victim with his penis was a reasonable inference to draw from the evidence that Petitioner's pubic hairs were recovered from the scene.

   While it is true that the prosecutor repeatedly referred to four stab wounds to the victim's vagina, the statement must be viewed in context. In this portion of the argument, the prosecutor argued that the direction of these wounds as opposed to the other stab wounds–angling upwards instead of downwards–suggested that they were specifically aimed at the genital area in a perverse sexual manner. The prosecutor used the term "vagina" colloquially to describe the location of these wounds. The argument was not so improper so as to render the trial unfair. *See Urban v. Cohn*, 2009 U.S. Dist. LEXIS 125050, 39-40 ( E.D. Mich. Dec. 4, 2009) (colloquial use of term "paranoid" by prosecutor in closing argument did not constitute misconduct).

10

Moreover, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985). Taken in context, and for the reasons stated by the Court of Appeals, the prosecutor's remarks were not improper, and Petitioner is not entitled to habeas relief with respect to his prosecutorial misconduct claim. *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000).

## C. Ineffective Assistance of Counsel

Petitioner next claims that his trial attorney provided ineffective assistance of counsel. He asserts that his attorney failed to object to the misconduct of the prosecutor and made a tactical mistake by calling Petitioner's cellmate to testify that Petitioner never confessed the crime to him.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly established federal law for purposes of evaluating an ineffective assistance of counsel claim. Under *Strickland*, an attorney is constitutionally ineffective if his or her "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

11

undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted).

> The Michigan Court of Appeals denied the claim as follows:
>
> > Nor did trial counsel provide ineffective assistance by deciding to call Rector, stipulating to the admission of the videotape into evidence, or allowing the jurors to view the tape during deliberations. Because defendant did not raise the issue of ineffective assistance in the trial court or seek a [*People v.* ] *Ginther*, [390 Mich 436 (1973)] hearing, we limit our review of defendant's claims to mistakes apparent on the record. *People v. Riley (After Remand)*, 468 Mich. 135, 139 (2003). To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. [*Id.* at 140, citations omitted.]
>
> > Rector's testimony stood in stark contrast with the other defense witnesses because Rector had no readily apparent bias in defendant's favor. In fact, trial counsel did a fine job emphasizing that Rector had every incentive to concoct a story about defendant confessing, but Rector did not. Therefore, Rector's lack of information about the crime injected a dose of doubt, however small, into an otherwise straightforward case. Although Rector overstated the incentive offered by police, several aspects of his testimony corresponded with the videotaped police interview, and the tape of the interview could be interpreted as satisfactorily explaining the "inconsistent" portions of Rector's testimony. In other words, defendant's appeal overstates the potential prejudice of the videotape and underestimates the value of Rector's testimony. Clearly, defendant's trial counsel thought that the reward of presenting the testimony outweighed the risk of any prejudice it might generate. This is the definition of sound trial strategy, and we will not revisit the decision with the benefit of hindsight. *Id.* Once Rector testified inconsistently with the videotape, the tape was admissible to impeach him, and defense counsel did not commit misconduct by failing to raise meritless objections. *Thomas*, *supra*.

12

*Ream*, 2007 Mich. App. LEXIS 1856, *10-12.

First, Petitioner alleges that his attorney was ineffective for failing to object to the prosecutor's alleged misconduct. However, the Court has determined that the prosecutor did not behave improperly. The failure to lodge a frivolous objection does not equal deficient performance. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

Next, Petitioner alleges that counsel was ineffective for calling Petitioner's cellmate, Dean Rector, as a witness for the defense. Rector testified that he had been convicted of second-degree murder and was in a cell adjoining Petitioner's and played cards and spoke with him most days. Rector claimed that two police detectives offered him a five year minimum sentence if he cooperated in the case against Petitioner. Despite the incentive to lie, Rector told the police that Petitioner never made any incriminating statements to him. The detectives met with Rector twice more, worsening the offer and finally threatening him with a maximum sentence. Nevertheless, Rector refused to state that Petitioner made any incriminating statements to him. As a result of Rector's testimony, the prosecutor was allowed to present the videotaped interview between the officers and Rector, showing the officers in a more favorable light.

As reasonably found by the state appellate court, the decision to call Rector was not professionally deficient. The prosecutor presented testimony that Petitioner made incriminating statements to various family members while he was in jail. Rector's testimony was offered as a counterweight, and it suggested that the police acted overzealously. While the exculpatory punch of his testimony was lessened by the introduction of the videotape, the decision to call him was the type of tactical call that cannot be second-guessed under *Strickland*. More importantly, the state appellate court's decision that counsel did not perform deficiently was certainly not one that all fairminded jurists would disagree with. Therefore, Petitioner's third

claim is without merit.

**D. Double Jeopardy**

Finally, Petitioner asserts that his right against being placed in double jeopardy was violated when the trial court imposed sentences for both his felony-murder conviction and first-degree criminal sexual conduct conviction.

The test for the multiple-punishment aspect of the Double Jeopardy Clause focuses on legislative intent. Under *Blockburger v. United States*, 284 U.S. 299, 304 (1932), where the same act or transaction constitutes a violation of two distinct statutory provisions, the test applied by the Supreme Court to determine whether Congress intended to create multiple offenses or only one, is whether each provision requires proof of an additional fact that the other does not. If each offense has an additional element, the Supreme Court presumes that Congress intended them to be viewed as separate offenses and warrant multiple punishment.

Petitioner makes an obvious point. Where first-degree criminal sexual conduct is the predicate offense to a felony-murder charge, one cannot commit the felony-murder without also having committed the criminal sexual conduct. In such a situation, punishing a defendant for both offenses seems to be a straightforward violation of *Blockburger*. The Michigan Court of Appeals agreed and ordered Petitioner's criminal sexual conduct conviction to be vacated. The Supreme Court, however, disagreed. It reasoned that in the abstract, the offenses each contain an element the other does not. The court explained that a felony murder charge can be supported by any one of a number of enumerated felonies, and thus it does not necessarily include criminal sexual conduct as an element. *Ream*, 481 Mich. at 241-242. And conversely, the court noted that one can obviously commit criminal sexual conduct without committing murder. *Id.* As framed in the state courts, then, the question was whether *Blockburger* required a court to look at

14

the specific facts of the charges brought against the defendant, or whether it should look at the offenses in the abstract.

That difficult question need not be answered here because the *Blockburger* test is, at root, simply a rule of statutory construction. *See Albernaz v. United States*, 450 U.S. 333, 340 (1981); *Missouri v. Hunter*, 459 U.S. 359, 367 (1983); *Whalen v. United States*, 445 U.S. 684, 691 (1980); *Beam v. Foltz*, 832 F.2d 1401, 1411 (6th Cir. 1987). The Supreme Court explained that effectuating legislative intent is all that lies behind the multiple-punishment protection of the Double Jeopardy Clause. Thus, if a legislature intends to authorize cumulative punishment under two statutes–even if those two statutes constitute the same "offense" under *Blockburger* test–multiple punishments after a single trial are permissible. *Hunter*, 459 U.S. at 368-69. As explained by the Sixth Circuit, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Banner v. Davis*, 886 F.2d 777, 781 (6th Cir. 1989).

In *Albernaz*, the Supreme Court stated that the "dispositive question" in the multiple punishment context is whether Congress intended to authorize separate punishments for the two crimes. 450 U.S. at 344. "This is so because the 'power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress.'" *Id.* The Court held that "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Id.*

This point was brought home in *Hunter*, where the Supreme Court was confronted with a case where, as here, two State offenses as applied to the defendant failed the *Blockburger* test, but the State Supreme Court had found that its Legislature nevertheless intended to impose

15

multiple punishments. The two offenses at issue were first-degree armed robbery and "armed criminal action." As in the present case, these were compound offenses: one cannot commit armed robbery without committing armed criminal action. Nevertheless, the Supreme Court reversed the finding by the Missouri Supreme Court that punishment for both offenses violated Double Jeopardy:

> Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear. Here, the Missouri Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments. Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Hunter*, 459 U.S. at 368-369.

When the Michigan Supreme Court applied its own version of the *Blockburger* test–looking at the two statutory provisions in the abstract–it in effect found that the Michigan legislature intended for a person who commits both criminal sexual conduct and felony-murder to be punished for both offenses. The state court is the final expositer of its own laws. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Therefore, this Court cannot second-guess the Michigan Supreme Court's conclusion that the Michigan legislature intended for multiple punishments to be imposed on someone who commits both felony-murder and first-degree criminal sexual conduct. Because that legislative intent has been decided by the Michigan Supreme Court,

16

Petitioner's double jeopardy claim must fail. Accordingly, Petitioner's double jeopardy claim is without merit.

## V. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Rule 11, Rules Governing Section 2254 Proceedings.

When a district court denies a habeas petition, a certificate of appealability should issue only if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the present case, for reasons stated in greater detail in the opinion and order denying the petition, this Court found that Petitioner's application for a writ of habeas corpus is meritless. The Court will deny petitioner a certificate of appealability with respect to his claims because reasonable jurists would not find it debatable whether this Court was correct in determining that the petition should be denied.

## VI. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability.

**SO ORDERED.**

_____
Honorable Paul D. Borman
United States District Judge

Dated: 3-13-12